IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MANNING BROADCASTING, INC.,

*Plaintiff,*

v().

LOUIS F. MERCATANTI, JR.,

*Defendant.*

Civil Action No.: 12-cv-00195

**MEMORANDUM OPINION**

Plaintiff Manning Broadcasting, Inc. ("Manning Co.") sued Louis F. Mercatanti, Jr., for "breach of [] Guaranty," complaining that Mercatanti failed to pay Manning Co. a total of approximately $2.5 million, plus interest and attorneys' fees, pursuant to a personal guaranty (the "Guaranty") executed by Mercatanti on April 13, 2005.[1] *See* Complaint (ECF 1). The Guaranty pertained, *inter alia*, to an Asset Purchase Agreement of December 2004, by which Manning Co. agreed to sell and/or assign to Nassau Broadcasting I, LLC ("Nassau I") and Nassau Broadcasting III, LLC ("Nassau III," and collectively "Nassau") its two radio stations in Hagerstown, Maryland. *See* Guaranty, ECF 1-1 at 1. At the relevant time, Mercatanti "h[eld] all of the ownership interests in" Nassau I and Nassau III. *Id.*[2]

Manning Co. has filed a Motion for Partial Summary Judgment ("Motion," ECF 21) on the issue of Mercatanti's liability on the Guaranty, supported by a Memorandum of Law

---

[1] Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

[2] A related case, *Manning, et al. v. Mercatanti*, 11-cv-2964 (the "Companion Case"), also involves a guaranty executed by Mercatanti on April 13, 2005. But, it is not the same as the Guaranty at issue here. In the Companion Case, the Mannings seek payment from Mercatanti of the sums due to them under Employment Agreements guaranteed by Mercatanti. I incorporate by reference the "Factual Background" contained in the Memorandum Opinion of the Companion Case, filed on December 24, 2013. *See* ECF 44 in the Companion Case.

("Memo," ECF 21-1) and exhibits. Mercatanti has filed an Opposition ("Opp.," ECF 21) and exhibits, to which Manning Co. has replied ("Reply," ECF 25). The Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6.

## Factual Background

In December 2004, Nassau and Manning Co. entered into an Asset Purchase Agreement ("APA"), pursuant to which Manning Co. agreed to sell to Nassau two radio stations in Hagerstown, Maryland. *See* Declaration of J. Frederick Manning in Support of Motion for Summary Judgment, dated March 18, 2013 ("Manning Dec.," ECF 21-2) ¶ 3. In connection with the APA, Nassau executed a promissory note (the "Note") dated April 13, 2005, "in lieu of cash for a portion of the purchase price" for the "acquisition of the [radio s]tations' assets . . . ." Guaranty at 1. As a condition of the sale to Nassau, Mercatanti signed the Guaranty, which guarantees payment under the Note, because defendant "h[eld] all of the ownership interests" in Nassau I and Nassau III. Guaranty at 1; *see* Manning Dec. ¶¶ 3–7. Nassau failed to pay the amounts outstanding under the Note. Manning Dec. ¶ 12. As a result, Manning Co. filed suit to collect the amounts outstanding from Mercatanti, pursuant to his Guaranty.

Bankruptcy proceedings were commenced on September 15, 2011, in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") as to several Nassau entities. Declaration of Jerry Hall, Esquire ("Hall Dec.," ECF 25-2) ¶ 2.[3] The case is captioned *In re Nassau Broadcasting Partners, et al.*, Case No. 11-12934 (KG) ("Nassau Case"). Hall Dec. ¶ 3. On February 8, 2012, Nassau filed a motion with the Bankruptcy Court requesting authority to approve auction procedures by which Nassau would sell substantially all of its assets, including several radio stations, at auction ("Sale Motion"). Hall Dec. ¶ 6; Ex. C to Hall

---

[3] Mr. Hall represents plaintiff here and in connection with the Bankruptcy Court litigation.

Dec. On February 22, 2012, the Bankruptcy Court entered an order approving the auction procedures set forth in the Sale Motion. Hall Dec. ¶ 7, Ex. D to Hall Dec.

Nassau conducted the auction for its radio stations on May 3, 2012. Hall Dec. ¶ 8. Manning Co. and Mercatanti attended the auction as bidders. Hall Dec. ¶ 9, Ex. E to Hall Dec. Manning Co. bid on stations WAFY, WARK and WWEG ("Subject Stations"), located in Frederick and Hagerstown, Maryland. Hall Dec. ¶ 10, Ex. F to Hall Dec. Although other bidders appeared and bid on the Subject Stations, Manning Co. was selected by Nassau as having made the highest and best bid at $6.4 million in cash (plus cure amounts). *Id.* Mercatanti reserved his right to object to Manning Co.'s successful bid. Hall Dec. ¶ 9, Ex. E to Hall Dec. at 64.

On May 4, 2012, Nassau filed with the Bankruptcy Court a "Notice of Successful Bidders at 363 Auction Sale." Hall Dec. ¶ 11, Ex. F to Hall Dec. Manning Co. is listed as the prevailing bidder for the Subject Stations. *Id.*

The Bankruptcy Court conducted an evidentiary hearing on May 7, 2012, in regard to Nassau's request to sell the Subject Stations to Manning Co. pursuant to an Asset Purchase Agreement (the "Purchase Agreement"). Hall Dec. ¶ 12. Mercatanti appeared at this hearing, but interposed no objection to the proposed sale of the Subject Stations to Manning Co. Hall Dec. ¶ 13. During the hearing, specific mention was made of Manning Co.'s release of Nassau and reservation of rights against Mercatanti. In particular, Nassau's counsel stated, Ex. G to Hall Dec. at 58: "The releases would go to the Manning Broadcasting Company and the two principles, Gene and Frederick Manning, and the estates will get releases, but there will be no releases of the third parties from Manning Broadcasting. And, principally, that's because Mr. Mercatanti has purportedly guaranteed obligations to Manning Broadcasting."

3

On May 8, 2012, the Bankruptcy Court entered its order approving the sale of the Subject Stations to Manning Co. ("Sale Order," Ex. H to Hall Dec.). Hall Dec. ¶ 15. The Sale Order stated, *inter alia*: "The Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets," Sale Order ¶ E; "The consideration being paid by [Manning Co.] to acquire the Assets constitutes reasonably equivalent value and fair consideration . . . ." *Id.* ¶ G; and, "The sale of the Assets and the consideration provided by [Manning Co.] under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law." *Id.* ¶ 26.

Section 2.1 of the Purchase Agreement describes the consideration to be paid by Manning Co. to Nassau in exchange for the Subject Stations. Hall Dec. ¶ 15 n.2, Ex. I to Hall Dec. Specifically, Manning Co. agreed to pay cash in the amount of $6.4 million and to cure any monetary defaults owing in connection with any leases or contracts assigned by Nassau to Manning Co. Hall Dec. ¶ 15, Ex. I to Hall Dec. at §2.1. Further, the Purchase Agreement provides: "[Manning Co.] and [Nassau] shall each execute global mutual releases waiving and releasing all claims and causes of action (known and unknown) they may have against each other . . . ." Ex I. to Hall Dec. at § 14.24. But, it also contains an express reservation that states, Ex. I to Hall Dec. at § 14.27: "Nothing in this Agreement shall affect any rights, claims or causes of action [Manning Co.] (or any of its principals) has against Louis Mercatanti."

Additional facts are included in the Discussion.

## Standard of Review

Plaintiff has moved for summary judgment pursuant to Fed. R. Civ. P. 56. Under Rule 56(a), summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former Fed. R. Civ. P. 56(c)). In resolving a summary judgment motion, the court must view the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co.,* 475 U.S. 574, 587 (1986); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

The non-moving party bears the burden of demonstrating that there are disputes of material fact so as to preclude the entry of judgment as a matter of law. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. To meet this burden, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*; *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). Stated another way, "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts'" showing that there is a genuine dispute of material facts. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322-24. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Id*. at 249. If "the evidence is such that a reasonable jury could return a verdict" for the non-moving party, there is a dispute of material fact that precludes summary judgment. *Id.* at 248.

### Contentions

According to Manning Co., "[i]t is uncontested that Mercatanti owes Manning Co. an obligation" and that "Mercatanti has breached his obligations." Memo at 4. Mercatanti does not dispute these points. *See* Response to Statement of Undisputed Material Facts (ECF 24-1) ¶¶ 3, 12, 13. However, Mercatanti raises three arguments in his Opposition that he claims preclude entry of summary judgment. First, he argues that the Motion was untimely filed and therefore should be denied. Opp. at 7. Second, he argues that the release of Nassau, the principal debtor, in the Purchase Agreement also serves to discharge the debt of Mercatanti, the guarantor. Opp. at 2. Third, he argues that Manning Co.'s rights against Mercatanti "were extinguished by the steeply discounted cash value paid by Manning under the [Purchase Agreement]." *Id.* at 3.

Manning Co. further asserts that $1,082,812.50 is due on the Note. *See* Manning Dec. ¶ 13. But, no documentary evidence has been proffered regarding the amount outstanding. And, Mercatanti disputes Manning Co.'s calculation. *See* ECF 24-1 ¶ 11. Accordingly, this Memorandum addresses only the question of liability *vel non*, and not the extent of that liability.

For the reasons that follow, none of defendant's arguments precludes entry of partial summary judgment as to liability. Accordingly, I will grant the Motion.

### Discussion

Mercatanti first contends that the Motion should be denied as untimely.

Pursuant to a proposal of the parties, this Court entered a Scheduling Order (ECF 11) on February 17, 2012, which provided a deadline for filing dispositive motions: 160 days after the

6

Court rendered a decision on the then-pending dispositive motions. *Id.* at 1–2.[4] The Court rendered a decision on those motions on August 27, 2012. *See* ECF 17. Therefore, pursuant to the schedule set out in ECF 11, additional dispositive motions were due by February 3, 2013. *See* Memo to Counsel dated February 12, 2013 (ECF 20) ("Thus, the deadline for dispositive motions expired on February 3, 2013."). However, no dispositive motions were filed by that date.

In a Status Report filed on February 26, 2013, the parties advised that they were engaged in active settlement talks. *See* ECF 36 in the Companion Case.[5] Those talks did not prove successful. Nevertheless, it appears that, because of the settlement discussions, plaintiff did not file its Motion for Partial Summary Judgment until March 18, 2013. ECF 21. It also filed a contemporaneous Motion for Leave to File Motion for Partial Summary Judgment (ECF 22), in which it explained, *id.* ¶ 8: "Granting leave to file the MSJ will not prejudice any party. On the contrary, the MSJ is the most efficient way to resolve this portion of the action and will conserve resources of the parties and the Court." The Court granted the Motion for Leave on March 19, 2013, "without prejudice to defendant's right to oppose the motion for summary judgment, including on the ground that the summary judgment motion was untimely filed." ECF 23.

Fed. R. Civ. P. 6(b)(1)(B) permits a district court to extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." Whether neglect is excusable is "at bottom an equitable [inquiry], taking account of all relevant circumstances," including: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including

---

[4] The same Order was docketed in the Companion Case at ECF 28.

[5] The Status Report was only docketed in the Companion Case, but expressly provides that it pertains to both this case and the Companion Case.

whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993); *see also Fernandes v. Craine*, ___ Fed. App'x ___, Civ. No. 13-1298, 2013 WL 4427809 (4th Cir. Aug. 20, 2013).

In my view, these factors weigh in favor of Manning Co. There is little danger of prejudice to Mercatanti, as he does not dispute any of the material facts. Indeed, Mercatanti does not suggest that he has been prejudiced in any way. Moreover, the delay of six weeks was relatively short, and it had no impact on proceedings as no trial date had been set. The reason for the delay, although not expressly stated by plaintiff, appears to be that the parties were engaged in settlement discussions at the time of the original deadline for dispositive motions. Finally, there is no suggestion that Manning Co. acted in bad faith. Accordingly, in the exercise of my discretion under Fed. R. Civ. P. 6(b)(1)(B), I will not reverse my decision to extend the deadline for the filing of dispositive motions up to and including March 8, 2013, thereby rendering the Motion timely.

Next, Mercatanti argues that Manning Co.'s release of Nassau also discharged the debt of Mercatanti, the guarantor of Nassau's debt. Opp. at 7−8. In support of this claim, Mercatanti cites *Noma Electric Corp. v. Fidelity & Deposit Co. of Maryland*, 201 Md. 407, 94 A.2d 277 (1953), for the proposition that "the release of a principal discharges the surety." However, that general principle does not apply when the creditor expressly reserves his rights against the surety. *Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 120 Md. App. 538, 555, 707 A.2d 913, 921 (1998). And, it is undisputed that the Purchase Agreement expressly provides, Ex. I to Hall Dec. at § 14.27: "Nothing in this Agreement shall affect any rights, claims or causes of

8

action [Manning Co.] (or any of its principals) has against Louis Mercatanti." Accordingly, the Purchase Agreement did not discharge Mercatanti's debt.

Mercatanti's final argument is that Manning Co. received an approximately "$2 million cash discount on the fair market value" of the Subject Stations when it agreed to release Nassau, and that Maryland law requires this "discount" to be credited to Mercatanti, the guarantor. Opp. at 2; *see* Opp. at 9 (citing Restatement (Third) of Suretyship & Guaranty § 39(c)(i)). In other words, Mercatanti's contention is that Manning Co. received more than $2 million in exchange for releasing Nassau's debt, and that this amount should be credited to Mercatanti to preclude Manning Co. from double recovery on the same debt. And, assuming that the outstanding amount on the Note is somewhere in the range of $1 million (as Manning Co. claims), the $2 million credit would extinguish any remaining debt.

Mercatanti's premise and conclusion are both incorrect. His premise—that the $6.4 million price was less than the fair market value of the Subject Stations—is based on his assertion that in his "professional and business opinion, based on [his] twenty-five years of valuing radio station assets, $8,704,000 was the accurate fair market value of [the Subject Stations]." Declaration of Louis F. Mercatanti, dated April 4, 2013 (ECF 24-2) ¶ 18. However, this claim is belied by the record.

Notwithstanding Mercatanti's opinion, "fair market value is, by necessity, best set by the market itself." *Keener v. Exxon Co., USA*, 32 F.3d 127, 132 (4th Cir. 1994). As discussed, the Subject Stations were sold at a public auction as part of a bankruptcy proceeding. The Bankruptcy Court explicitly ruled that the Subject Stations were adequately exposed to the market, Sale Order ¶¶ E, and that "[t]he sale of the Assets [*i.e.* the Subject Stations] and the consideration provided by [Manning Co.] under the Purchase Agreement is fair and reasonable

9

and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law." *Id.* ¶ 26.

Mercatanti's self-serving statement, which is unsupported and indeed contradicted by the record, is insufficient to defeat summary judgment. *See Jiggets ex rel. S.J. v. Long*, 510 F. App'x 278, 286 (4th Cir. 2013) (citing *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("[S]elf-serving statements in affidavits without factual support in the record carry no weight on summary judgment.").

Even if Manning Co. had received a "discount," Mercatanti would not be entitled to an offsetting credit because the express contractual language in the Guaranty renders the general rule inapplicable. The Guaranty expressly provides that Mercatanti's debt would not be discharged by the release or modification of the principal's debt. In particular, paragraph 4 of the Guaranty provides, in relevant part, that Manning Co. "may from time to time, and without exonerating or releasing the Guarantor in any way under this Guaranty: . . . (iii) amend, modify, extend, accelerate or waive in any manner any of the provisions, terms, or conditions of the Guaranteed Obligations, all as [Manning Co.] may consider expedient or appropriate in its sole discretion." Guaranty ¶ 4. Similarly, paragraph 5 provides, in part:

> Without limiting the generality of the foregoing, the Guarantor agrees that until each and every one of the covenants and agreements of this Guaranty is fully performed, the Guarantor's undertakings hereunder shall not be released, in whole or in part, by any action or thing which might, but for this section of the Guaranty, be deemed a legal or equitable discharge of a surety or guarantor, or . . . by reason of further dealings between Nassau on the one hand and [Manning Co.] on the other hand, or any other guarantor or surety, and the Guarantor, to the extent permitted by applicable law, hereby expressly waives and surrenders any defense to its liability hereunder, or any right of counterclaim or offset of any nature or description which it may have or which may exist based upon, and shall be deemed to have consented to, any of the foregoing acts, omissions, things, agreements or waivers.

Because the Guaranty expressly provided that Mercatanti's debt would not be discharged by the release of Nassau's debt, Mercatanti is not entitled to any offset of the amount he owes as guarantor of the Note.

**Conclusion**

For the foregoing reasons, Mercatanti is liable for the outstanding amount on the Note. Accordingly, the Court will grant plaintiff's Motion for Partial Summary Judgment (ECF 21), with the amount of judgment to be determined. A separate Order, consistent with this Opinion, follows.

Date: December 24, 2013                           /s/
                                                  Ellen Lipton Hollander
                                                  United States District Judge